CERVECERÍA INDIA, INC., Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener.

No. 235. Argued May 4, 1950.—Decided May 31, 1950.

464

*J. Alemañy Sosa* for petitioner.   *Vicente Géigel Polanco, Attorney General,* and *J. C. Santiago Matos, Assistant Attorney General,* for intervener, respondent in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

We issued the writ of certiorari in order to review the decision of the Tax Court which dismissed the complaint in this case, whereby petitioner requested the refund of excises in the amount of $594.07, paid under protest, which were imposed by the Treasurer of Puerto Rico on electric equipment and devices imported from the United States in July 1947 and August 1948.

It was alleged in the complaint that the aforesaid electric equipment and devices were exempted from the payment of excises under § 16–B of the Internal Revenue Law as amended by Act No. 436 of May 14, 1947,[1] because said equipment was imported "to be used as part of the equipment of the machinery that the petitioner was installing in its new beer factory" and "because the latter constituted part of the machinery essential for the establishment and

---

[1] Section 16–B as amended by Act No. 436 of 1947, says:

"Section 16–B.—There shall be exempt from the payment of the excises imposed by this Act all apparatus, machinery, or equipment that may be essential for the establishment and operation of industrial plants; *Provided,* That there shall be considered covered by this exemption the sub-units or major features of the said apparatuses, equipment, or machinery that may be necessary to replace other sub-units or to enlarge or improve the equipment, but there shall not be included the spare parts, parts, or accesories of the machinery or of the sub-unit whose 'cost in Puerto Rico' per individual unit may be less than twenty (20) dollars; *Provided, likewise,* That there shall be understood by sub-unit or major feature the substantial sections, parts or accesories of the essential machinery or equipment; *Provided, finally,* That this being an exemption which covers the essential machinery for the establishment and operation of industrial

operation of its industrial plants in the factory stage of the latter." The Treasurer denied that the electrical equipment imported was exempt, because it was not essential for the installation and operation of the industrial plants of the petitioner in its factory stage, since it was not utilized "in the factory stage of the industrial process that has to do with raw materials from the beginning of its manufacturing process until its completion", and because the cost of the equipment and devices per unit in Puerto Rico was less than $20.

In its "Statement of accepted and proved facts" the Tax Court states, among other things, the following:

"The petitioner is a domestic industrial company which manufactures and sells beer, malt and soft drinks, with offices and the main business seat in Mayagüez.

"In December 1945, the petitioner started the construction of four buildings in which it would install, as it did, a new plant for the manufacture of beer and soft drinks, which plant started to be utilized about August, 1948. Said buildings consist of different sections in which the beer as well as the soft drinks are manufactured (Blue House), bottled, and refrigerated (freezers).

"On July 2, 1947, said plaintiff imported from the United States electrical equipment worth $2,234.04 and on August 23, 1948, it imported more electrical equipment, at a cost of $221.25. The imported electrical equipment consisted of No. 4 and No. 8 wire, a cable, searchlights, glasses for protecting the bulbs, switches, box covers, racks, sockets, cubits, outlets and other fittings necessary for the installation of electric power or energy.

" . . . . . . . . . .

---

plants, it shall be construed as applicable only to the machinery of the factory stage of production of the industrial process, having to do with raw materials from the beginning of the manufacturing process until completion thereof, including packing and labelling of the product; but it shall not cover the machinery, apparatuses, equipment, or vehicles used in the administrative or commercial stage of the industry; *Provided, however,* That there shall be covered by the said exemption any machinery or equipment installed in the manufacturing plant for the health of the workers or for the prevention of accidents."

On May 7, 1949, § 16–B was amended again by Act No. 195. Though the result would be the same, it is not applicable in this case.

"Number 8 wire was utilized in the installation of the interior lighting of the buildings of the new plant and No. 4 wire, which is thicker and is covered with rubber, for supplying electric energy to the motors of the new machinery of the said plant, also for supplying electric power to the portable pumps which are used for drilling and welding and for pumping the beer in stock in the new plant; the searchlights were installed in the freezers where the beer is kept, in order to give the necessary light to those sections; the glasses were used to protect the lighting bulbs in the freezers from the low temperature existing in those rooms; said bulbs are necessary to furnish light for the benefit of the persons who work in such places and to help the employee to watch the operation of the machinery and to use the necessary implements in order to be able to run the equipment efficiently. The switches are used to control the bulbs installed in the beer tanks in the rooms used for the freezers and in the 'Blue House', which is the place where the beer which is later taken to the freezers is brewed or made. The racks which are a steel apparatus where the cables rest, were utilized to support the weight of the cables which carry electric energy to the motors, and the covers were used to cover the metal boxes or pieces which are fixed in the walls to facilitate the installation of the wires, especially at such points on the walls where they have to be curved.

"In short, all the imported equipment was utilized in the lighting of the new buildings and for supplying electric energy to the motors of the new machinery installed therein. In other words, all of said material was utilized in the new industrial plant in order to furnish it with the necessary electrical equipment for lighting and moving said machinery, not having used any part of that material for lighting the offices or other sections not related with the factory stage of the industry."

It also accepted as proved the fact that the cost in Puerto Rico of the imported electrical equipment or devices was never more than $20 per unit or piece, and it decided that for said reason the taxpayer was not entitled to the exemption claimed under § 16–B, as amended by Act No. 436 of May 14, 1947, as it expressly excluded from said exemption any individual unit which would cost in Puerto Rico less than the said amount.

The petitioner maintains that since in its case it is a question of electrical equipment or devices essential for the installation or establishment of its new industrial plant, indispensable for operating the new machinery installed, and not of substituting, enlarging or improving the equipment of an existing plant, the limitation imposed by the amendment of May 14, 1947, in connection with the exemption of spare parts, pieces and accessories, does not operate against it, as all the machinery, apparatus or equipment [2] essential for the *establishment* of industrial plants (only the factory stage of the industrial process) are tax-exempt, the limitation being directed to exclude spare parts, pieces and accessories necessary for the replacement, enlargement or improvement of the equipment.

The intervener maintains that the limitation imposed by the amendment of May 14, 1947, regarding the cost per individual unit, covers not only the pieces and accessories necessary for repair, but also the pieces and accessories of the main machinery.

Section 16–B, as added to the Internal Revenue Act by Act No. 77 of May 9, 1944, provided:

"Section 16–B.—There shall be exempt from the payment of the excises imposed by this Act all machinery, apparatus, or equipment that may be essential for the establishment and operation of industrial plants; *Provided,* That the Treasurer of Puerto Rico shall prescribe the regulations that may be necessary in order to enforce the provisions of this section."

Interpreting said Section, this Court decided in *Buscaglia, Treas.* v. *Tax Court,* 67 P.R.R. 53, that in exempting from taxes all machinery essential for the establishment and operation of industrial plants pursuant to said Section, the Legislature intended to include, not only the machines proper, but also the spare parts, pieces and accessories thereof. This Court partly expressed itself in said case:

---

[2] As to the scope of the term "equipment", *Buscaglia, Treas.* v. *Tax Court,* 67 P.R.R. 53; *cf. Descartes, Treas.* v. *Tax Court, ante,* p. 463.

"We have before us another tax-exempting statute, Act No. 77 of 1944. This Act exempts from the payment of excises 'all machinery, apparatus or equipment that may be essential for the establishment and operation of industrial plants.' It also seeks the purpose of stimulating and promoting the establishment of industrial plants in Puerto Rico. The legislative intent appears from the clear language of the statute. It can be no other than to free as much as possible the industrial plants from tax burdens, so as to attract the greatest number of such plants to our island. The lawmaker has not confined himself to promoting the *establishment* of these industrial plants. *He has gone further, and has extended his protection to the operation of such plants in order that they may operate uninterruptedly, having spare parts and accessories.*" (Italics ours.)

Indeed, as we said in *Central Coloso* v. *Tax Court*, 70 P. R.R. 62, the chief purpose of Act No. 436 was "to meet the situation created by our decision in *Buscaglia, Treas.*, v. *Tax Court*, 67 P.R.R. 53, as to parts and accessories . . ." and clearly the limitation of $20 cost in Puerto Rico to the unit of the parts, pieces or accessories, refers to the clause immediately preceding such limitation, contained in the first *Provided* of § 16–B, as amended by Act No. 436, that is, the exemption of the major features of the apparatuses, machinery or equipment that may be necessary to replace, enlarge or improve the equipment, but not to the original installation of apparatus, machinery or equipment essential for the *establishment* of an industrial plant, in connection with the factory stage of the industry. This being so, and it being stated by the lower court in its "Statement of proved and accepted facts," [3] that all the equipment and electrical devices imported by the petitioner were utilized in its new industrial plant in order to furnish it with the electrical equipment necessary to operate the machinery at the factory stage in the

---

[3] However, the lower court, in deciding that the electrical equipment was excluded from the exemption because its cost was less than $20 per individual unit in Puerto Rico, said the following:

"Assuming, without deciding, since it is not necessary in this case, that the electrical equipment which the plaintiff imported and installed in its new operation unit is part of the machinery or equipment essential

industrial process for the manufacture of beer, the latter is entitled to the exemption claimed.

The order appealed from will be reversed and the complaint granted.

Mr. Justice Snyder did not participate herein.

for the establishment and operation of said industrial plant in the factory stage thereof, as well as that said electrical devices are spare parts, pieces or accessories of the machinery or equipment, said material, since its cost per individual unit in Puerto Rico is less than $20, is excluded from the exemption and therefore, it was and is subject to the excise fixed by respondent, the plaintiff being liable for its payment."